# EXHIBIT A

IN THE CIRCUIT COURT FOR CHEATHAM COUNTY, TENNESSEE

| | |
|---|---|
| **SARA MAJORS and** ) | |
| **PASI LEPPIKANGAS,** ) | **JURY DEMAND** |
| ) | |
| **Plaintiffs,** ) | Case No. 6351 |
| ) | |
| **v.** ) | |
| ) | **FILED** |
| **STATE FARM FIRE AND** ) | |
| **CASUALTY COMPANY,** ) | JUL 0 7 2015 |
| ) | |
| **Defendant.** ) | **JULIE HIBBS** |
| ) | **CIRCUIT COURT CLERK** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, **SARA MAJORS and PASI LEPPIKANGAS**, for their Complaint against the

Defendant, **STATE FARM FIRE AND CASUALTY COMPANY**, ("Defendant"), would

respectfully show and allege to the Court as follows:

### PARTIES AND JURISDICTION

1.      Plaintiffs, SARA MAJORS and PASI LEPPIKANGAS, own and reside at the

property located at 1220 Wax Wing Circle, Kingston Springs, TN 37082.

2.      Defendant, STATE FARM FIRE AND CASUALTY COMPANY, is a for-profit

foreign insurance company authorized to engage in, and does engage in, the sale and delivery of

property insurance within the State of Tennessee. The registered agent for service of process of

STATE FARM FIRE AND CASUALTY COMPANY is the Tennessee Department of

Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee, 37243.

3.    Plaintiffs' claim for relief arises from a covered loss to their property located at 1220 Wax Wing Circle, Kingston Springs, TN 37082 (the "Property"). Venue is proper pursuant to Tenn. Code Ann. § 20-4-103.

## FACTS

4.    At all times material hereto, Plaintiffs have been the owner of the Property.

5.    Plaintiffs renewed or procured a policy of homeowners' insurance, policy number 42GM6084-7 ("Policy"), from Defendant covering the above-referenced property. Attached hereto as **Exhibit A**.

6.    In consideration of monies paid by Plaintiffs to Defendant, the "all-risk" Policy was issued, insuring the Plaintiffs' property against all risks which are not excluded, including sinkholes. The insurance policy provided dwelling insurance coverage, in addition to other coverages.

7.    Plaintiffs have renewed the Policy each and every year and have paid all premiums due thereunder and otherwise met all conditions of coverage thereunder.

8.    On or about March 18, 2014, while the Policy was in full force and effect, the dwelling located on the Property was damaged by a covered peril.

9.    A notice of loss and damages was properly and promptly given by Plaintiffs to Defendant in accordance with the terms of the Policy.

10.   Plaintiffs have fulfilled all of the duties after the Loss that were imposed upon them by the Policy.

11.   Without consulting Plaintiffs in its choice of engineer, Defendant sent Rimkus Consulting Group, Inc., ("Rimkus") to Plaintiffs' Property who denied the damage to the Property was caused by sinkhole activity.

2

12.    Given concerns with the propriety of Rimkus' testing and report, as adopted by Defendant, Plaintiff retained the services of Plaintiff's own geotechnical engineering firm to conduct a review of this matter.

13.    Upon information and belief, the geotechnical engineering firm retained by Defendant, Rimkus, failed to comply with standard geotechnical engineering practices and procedures in completing its inspection, testing, and evaluation of the damages to Plaintiffs' Property.

14.    Defendant has taken the position that the damage to the Property consistent with sinkhole activity was not caused in fact by sinkhole activity on the Property.

15.    On or about January 9, 2015, Defendant sent correspondence denying Plaintiffs' claim based on the Rimkus report.

16.    On or about May 28, 2015, Plaintiffs, through counsel, sent a Formal Demand to Defendant requesting that Defendant consider all of the evidence in order to make an informed decision concerning the Plaintiffs' Property and the claim and that the full amount be paid. Attached hereto as **Exhibit B.**

17.    Plaintiffs have complied fully with all of the provisions of the Policy, but Defendant has declined or refused to make payment to Plaintiffs for the loss and damage sustained. Defendant's refusal to promptly and fully pay Plaintiffs the amounts owed as a result of the Loss is without justification.

18.    Defendant's refusal to pay the money and benefits due and owing Plaintiffs under the Policy has caused Plaintiffs to seek legal counsel and pay them a reasonable fee for their services, and to initiate this Complaint to recover the insurance proceeds and/or other Policy benefits to which they are entitled.

## **BREACH OF CONTRACT**

19.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 18 above as though fully set forth herein.

20.     The Policy issued by Defendant to Plaintiffs is a binding contract, and is supported by valid consideration.

21.     Defendant is in total material breach of the Policy, and Defendant is liable to Plaintiffs in the maximum amount allowed by the Policy for the covered damage caused to the Property. Specifically, Defendant's breach of contract includes its failure and refusal to pay all amounts owed to Plaintiffs for the damage to the Property and its failure and refusal to pay all amounts owed to Plaintiffs for all benefits due under the Policy. Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim.

22.     As a result of Defendant's breach of contract, Plaintiffs have sustained substantial compensable losses for the amounts claimed under the Policy. Defendant owes Plaintiffs prejudgment interest, expert fees, costs, the costs of all structurally necessary repairs, and, if the home is not repairable within applicable coverage limits, an amount equal to such limits for the total constructive loss.

23.     Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange*, 2013 Tenn. App. LEXIS 712, *47 (Tenn. Ct. App. Oct. 31, 2013). Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to properly investigate the Property as required under the Policy and state statute; (2) failed to effectuate a prompt and fair settlement of Plaintiffs' claim when liability was clear; (3) unjustly refused

4

and/or failed to pay Plaintiffs' claim for its own financial preservation with no reasonable or justifiable basis; (4) failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim; (5) failed to investigate the Plaintiffs' claim in a prompt and thorough manner; (6) represented to its insured that exclusionary language contained in the Policy excluded coverage of the claim, when the Defendant knew or should have known that it did not exclude coverage and (7) engaged in such acts as are set forth in paragraphs 26 and 27 below. Plaintiffs seek, and are entitled to, punitive damages.

## BAD FAITH

24. Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 23 above as though fully set forth herein.

25. Defendant's failure and refusal to pay the amounts owed to Plaintiffs is arbitrary and capricious and is not in good faith, and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than sixty (60) days have passed since a formal demand has been made on Defendant and full payment has not been made for Plaintiffs' covered loss as required by the Policy, for which the twenty-five percent (25%) statutory penalty for bad faith should be invoked. Defendant's bad faith failure to pay has inflicted expense, loss, and injury upon Plaintiffs. Accordingly, Plaintiffs are entitled to recover, in addition to the amount of the insured loss and interest thereon, an amount equal to twenty-five percent (25%) of the liability for the loss, pursuant to Tenn. Code Ann. § 56-7-105.

26. The bad faith of Defendant is evidenced by the fact that, at all times hereto, Defendant knew, or reasonably should have known, that Plaintiffs were justifiably relying on the money and benefits due them under the terms of the Policy and as otherwise promised and

5

represented by Defendant, as well as the actions of Defendant as set forth more fully below. Nevertheless, acting with conscious disregard for Plaintiffs' rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiffs, Defendant consciously refused to fully pay Plaintiffs' valid claim and withheld monies and benefits rightfully due Plaintiffs. The acts and/or omissions of Defendant constitute bad faith with respect to the exercise of its duties and obligations to the Plaintiffs, including, but not limited to:

(A)  Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of insurance claims;

(B)  Defendant failed to investigate the Plaintiffs' claims in a prompt and thorough manner;

(C)  Defendant intentionally ignored requests to pay the claim of insurance policy coverage for the Plaintiffs' claims;

(D)  Defendant's intentional failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim;

(E)  Defendant's intentional refusal to pay Plaintiffs' claim and to otherwise honor its obligations under the Policy without conducting a reasonable investigation based on all available information;

(F)  Defendant's intentional refusal to fully investigate Plaintiffs' claim and to obtain all available information before denying the claim and alleging it has no further obligations to Plaintiffs;

(G)  Defendant's engaging in acts and practices toward Plaintiffs that amount to acts of baseness, vileness, and/or depravity that are contrary to the good faith duties owed to Plaintiffs;

(H)  Defendant's intentional failure to pay all amounts due and owing under the Policy with no reasonable or justifiable basis; and

(I)  Defendant's use of biased and unqualified "experts" to avoid its contractual obligations to Plaintiffs.

27.   Defendant's bad faith is further evidenced by the all of the facts and allegations set forth in this Complaint, together with the following non-exclusive facts:

6

- Defendant failed to advise Plaintiffs that it regularly hires Rimkus to conduct outcome-oriented investigations on homeowners' properties.

- Defendant's engineer, Rimkus, failed to perform a subsidence investigation adequate to eliminate the existence of sinkhole activity within a reasonable degree of professional probability.

- Defendant regularly hires the same outcome-oriented engineers in order to achieve its desired "engineering" outcome.

28.     In so acting, Defendant intended to and did injure Plaintiffs in order to protect its own financial interests, and should be punished via the twenty-five percent (25%) statutory bad faith penalty.

29.     Although Defendant is aware of Rimkus' flawed findings, Defendant blindly adopted Rimkus' inappropriate recommendation to the Property in an intentional placement of its own financial interests before Plaintiffs' interest in safeguarding their home.

30.     As discovery and depositions progress, Plaintiffs anticipate additional bad faith acts and/or omissions will come to light.

31.     It is worth noting that recently in *Am. Nat'l Prop. & Cas. Co v. Stutte*, the Court found that the insurer had a "good faith duty to consider evidence that came to light over the course of this litigation, and if that evidence made clear that the [Plaintiffs] did not destroy their home and that they were due losses under the policy, it should have paid their claims." 2015 U.S. Dist. LEXIS 55280, *6 (E.D. Tenn. Apr. 28, 2015). As a result, the court stated that if the insurer breached its obligations when it denied coverage originally, and "it has continued to deny coverage and/or refuse to settle the [Plaintiffs'] claim, then the 'failure to pay' continues, and the failure remains subject to the bad faith penalty." *Id.* at *10. Here, the Defendant has denied—and has continued to deny—Plaintiff's claim, therefore the "failure to pay" continues and Defendant remains vulnerable to a bad faith penalty.

32.     Defendant has exhibited a pattern of conduct with regard to its claims handling practices, which has resulted in repeated misconduct amounting to intentional or reckless bad faith toward its insureds. A history of court determinations and complaints of bad faith conduct on the part of Defendant has put Defendant on notice that its claims handling practices have resulted in repeated incidents of bad faith. In spite of such notice, Defendant has intentionally or recklessly or carelessly failed to correct its corporate policies or otherwise train its personnel in such a manner as to reduce or eliminate this misconduct.

WHEREFORE, as a result of the foregoing, Plaintiffs would respectfully request that this Honorable Court award a judgment to Plaintiffs as follows:

A.     For compensatory damages against Defendant not to exceed $200,000.00;

B.     For the statutory bad faith penalty not to exceed 25% of Plaintiffs' claim under the Policy;

C.     For all costs incurred by Plaintiffs as a result of this action;

D.     For pre- and post-judgment interest; and

E.     For such other further and general relief as this Court deems just and equitable.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a jury of twelve (12) persons to try all issues so triable in this matter and such further and general relief to which he may be entitled.

Respectfully submitted,

By:_Thomas W. Thompson_____.
**Smith, Kling & Thompson, P.A.**
Thomas W. Thompson, Esquire
thompson@smithkling.com
mrivera@smithkling.com
TBN: BPR030659
4725 North Lois Avenue

8

Tampa, Florida 33614-7046
Telephone:   (813) 254-1800
Facsimile:    (813) 254-1844
Attorney for Plaintiffs

9



# Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Fire and Casualty Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 42-GM-6084-7 including any endorsements, if applicable, for the policy term(s) November 27, 2013-2014 and insuring Majors, Sarah & Leppikangas, Pasi of 1220 Wax Wing Cir, Kingston Spgs TN 37082-5129 based on available records.

The following endorsements are included:
FP /7955/KT HOMEOWNERS POL
OPT BP BUS PERS PROP
LSP A1 SMLR CONST-A
LSP B1 LMT RPL COST-B
OPT ID COV A-INC DWLG
OPT OL ORDINANCE-LAW
OPT JF JEWELRY & FURS
FE /5706/4 DRAIN BACK-UP
FE /3530 HO-W POL END
FE /2340 AMENDATORY

The policy was in effect on the loss date of March 18, 2014.


Jim Kane
Underwriting Team Manager
Date: 6/12/15

State of Tennessee
County of Rutherford

Subscribed and sworn to before me this 12th day of June, 20 15

STATE OF
TENNESSEE
NOTARY
PUBLIC
CAROLYN SMOTHERMAN
RUTHERFORD COUNTY
COMMISSION EXPIRES 2-18-2019

Notary Public

My Commission Expires: Feb 18, 2019

EXHIBIT
A

1004516

2000 143551 200 03-21-2012

**State Farm Fire and Casualty Company**

*ate Farm*
2500 Memorial Boulevard
*Murfreesboro, TN 37131-0001*

I-11- 1954-FB8F    H  W    F
000225  0001

MAJORS, SARAH &
LEPPIKANGAS, PASI
1220 WAX WING CIR
KINGSTON SPGS TN   37082-5129

0205-K10401

Location:  Same as Mailing Address

**Loss Settlement Provisions (See Policy)**
A1  Replacement Cost - Similar Construction
B1  Limited Replacement Cost - Coverage B

**Forms, Options, and Endorsements**

| | |
|---|---|
| Homeowners Policy | FP-7955.KT |
| Business Property $5,000 | OPT    BP |
| Increase Dwlg up to $34,520 | OPT    ID |
| Ordinance/Law  10%/ $17,260 | OPT    OL |
| Jewelry and Furs $1,500/$2,500 | OPT    JF |
| Back-Up Dwell/Listed Property | FE-5706.4 |
| Homeowners Policy Endorsement | FE-3530 |
| Amendatory Endorsement | *  FE-2340 |

*Effective: NOV 27 2013

**RENEWAL CERTIFICATE**

POLICY NUMBER          42-GM-6084-7

**Homeowners Policy**
NOV 27 2013 to  NOV 27 2014

SEE BALANCE DUE FOR RENEWAL OFFER

TO BE PAID BY MORTGAGEE

**Coverages and Limits**

**Section I**

| | | |
|---|---|---|
| A  Dwelling | | $172,600 |
| Dwelling Extension | Up To | 17,260 |
| B  Personal Property | | 129,450 |
| C  Loss of Use | | Actual Loss Sustained |

**Deductibles - Section I**

| | |
|---|---|
| All Losses | 1,000 |

**Section II**

| | |
|---|---|
| L  Personal Liability | $300,000 |
| Damage to Property of Others | 500 |
| M  Medical Payments to Others (Each Person) | 2,000 |

| | |
|---|---|
| **Annual Premium** | $1,094.0 |

**Premium Reductions**

| | |
|---|---|
| Home Alert Discount | 105.0 |
| Home/Auto Discount | 449.0 |
| Claim Record Discount | 374.0 |

Inflation Coverage Index:    198.3

NOTICE:  Information concerning changes in your policy language is included.  Please call your agent if you have any questions.

Please help us update the data used to determine your premium. Contact your agent with the year each of your home's utilities (heating/cooling, plumbing, or electrical) and roof were last updated.

*Thanks for letting ...* 08/17/15     Page 12 of 81 information.
0701        201B         Agent BETHANY HARBIN CLU              REP        Prepared OCT 14 2013
* 10.NP.5l.1V.DR        Telephone (615) 356-6042  or  (615) 356-5949

Moving? See your State Farm agent.



**State Farm Fire and Casualty Company**

*State Farm*

*2500 Memorial Boulevard*
*Murfreesboro, TN 37131-0001*

POLICY NUMBER 42-GM-6084-7

**HOMEOWNERS AVAILABLE COVERAGE NOTICE**

SEE RENEWAL CERTIFICATE

AT2              I-11-  1954-FB8F    H  W  F
        D00225  0001
MAJORS, SARAH &
LEPPIKANGAS, PASI
1220 WAX WING CIR
KINGSTON SPGS TN  37082-5129

IT IS IMPORTANT THAT YOU OCCASIONALLY REVIEW THE COVERAGES AND LIMITS IN YOUR HOMEOWNERS POLICY TO BE CERTAIN YOUR NEEDS ARE BEING MET. THE FOLLOWING INFORMATION WILL ASSIST YOU IN THE REVIEW PROCESS.

THE COVERAGE LIMITS FOR COVERAGE A - DWELLING, COVERAGE B - PERSONAL PROPERTY, COVERAGE L - PERSONAL LIABILITY, AND COVERAGE M - MEDICAL PAYMENTS TO OTHERS ARE LISTED ON THE ACCOMPANYING RENEWAL NOTICE. PLEASE REVIEW THESE LIMITS TO DETERMINE IF THEY ARE ADEQUATE IN THE EVENT OF A LOSS.

THE FOLLOWING IS A **PARTIAL LIST** OF THE OPTIONAL COVERAGES YOU HAVE **NOT** ADDED TO YOUR POLICY. THEY MAY BE AVAILABLE TO YOU FOR AN ADDITIONAL PREMIUM.

Business Pursuits Liability (for teachers, school administrators, sales persons, and clerical workers)

Child Care Liability (for those providing child care in their home)

Earthquake

Firearms (for broadened coverage and higher limits)

Home Computers (for higher limits)

Identity Restoration

Incidental Business Liability (for those with an incidental office, studio, or school in the home)

Jewelry and Furs (for broadened coverage and higher limits)

Loss Assessment (for neighborhoods with Homeowners Associations)

Nurses Professional Liability (for those in the nursing profession)

Personal Injury (for your liability to others caused by certain acts of libel, slander, invasion of privacy, false arrest)

Silverware/Goldware (for broadened coverage and higher limits)

**This notice contains only a general description of the coverages and is not a contract. All coverages are subject to the provisions in the policy itself.** Should you have a need for any of these coverages or higher limits, contact your State Farm Agent to discuss details, cost and eligibility.

### IMPORTANT INFORMATION ABOUT DAMAGE CAUSED BY FLOODING

This policy does not cover damage to your property caused by flooding. You may be eligible for such coverage through the National Flood Insurance Program ("NFIP"), if you live in a participating community. For more information, contact your State Farm® agent or visit floodsmart.gov.

0700       2013   **Agent** BETHANY HARBIN CLU
1U.NP.6L1V.DR         **Telephone** (615) 356-6042 or (615) 356-5949     REP     **Prepared** OCT 14 2013

State Farm Fire and Casualty Company

2500 Memorial Boulevard
Murfreesboro, TN 37131-0001

I-11- 1954-FB8F   H   F

000225  0001
MAJORS, SARAH &
LEPPIKANGAS, PASI
1220 WAX WING CIR
KINGSTON SPGS TN   37082-5129

# BALANCE DUE NOTICE

| POLICY NUMBER | 42-GM-6084-7 |
|---|---|
| Homeowners Policy | |
| NOV 27 2013 to NOV 27 2014 | |

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| TO BE PAID BY MORTGAGEE | |

Location:  Same as Mailing Address

Important Message(s)

📞  44 3633 5079

See reverse for important information.
Please keep this part for your record.
Prepared  OCT 14 2013

Agent    BETHANY HARBIN  CLU
Telephone  (615) 356-6042  or  (615) 356-5949

{ Please fold and tear here }

MOVING? PLEASE SEE YOUR STATE FARM AGENT.       I- 1954-FB8F

| teFarm | INSURED | MAJORS, SARAH & |
|---|---|---|
| | POLICY NUMBER | 42-GM-6084-7 | HO - HOMEOWNERS |

NOTE: THE ANNUAL PREMIUM WAS
BILLED TO THE MORTGAGEE.

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| REVIEW RENEWAL OFFER | |

Renewal Offer:
INCREASING YOUR POLICY DEDUCTIBLE TO $2000
WILL REDUCE YOUR ANNUAL PREMIUM BY
$104.00 FOR A PREMIUM OF   $990.00.  TO
MAKE THIS CHANGE, RETURN THIS NOTICE IN THE
ENCLOSED ENVELOPE WITH NO PAYMENT.  PLEASE
NOTE, HIGHER DEDUCTIBLES MEAN LOWER PREMIUMS
BUT MAY REDUCE OUR PAYMENT TO YOU FOR A
COVERED PROPERTY CLAIM.  REFER TO THE
ENCLOSED INSERT FOR DETAILS.

Loan No: 7435314190

Please contact your State Farm Agent if you
have any questions about your policy.

1101312272
Insurance Support Center
P.O. Box 588002
North Metro, GA 30029-8002

538 181 b 8 10 04 2010                (o11309b)
r office use only     0221     M  0701     201B     I
epared:   OCT 14 2013
• 1U,NP,BI,1V,DR

| | REP | FIRE BAL DUE | | 1227 |
|---|---|---|---|---|

210336100000000   442261534084701511>

# FE-5706.4 BACK-UP OF SEWER OR DRAIN ENDORSEMENT ($10,000 LIMIT)

The following is added to SECTION I – ADDITIONAL COVERAGES:

Back-up of Sewer or Drain. We cover the dwelling used as a private residence on the residence premises shown in the Declarations and only the following personal property, while located in the dwelling:

a. clothes washers and dryers;

b. food freezers and the food in them;

c. refrigerators;

d. ranges;

e. portable dishwashers; and

f. dehumidifiers;

for direct physical loss caused by the back-up of water or sewage, subject to the following:

a. The back-up must be directly and immediately caused solely by water or sewage:

   (1) from outside the residence premises plumbing system that enters through a sewer or drain located inside the interior of the dwelling; or

   (2) which enters into and overflows from within a sump pump, sump pump well, or any other system located inside the interior of the dwelling designed to remove subsurface water drained from the foundation area.

b. Coverage does not apply to:

   (1) losses caused by your negligence;

   (2) losses that occur or are in progress within the first 5 days of the inception of this endorsement. This limitation does not apply when:

      (a) this endorsement is attached to a newly issued policy; or

      (b) this endorsement is attached to replace another Back-Up of Sewer or Drain Endorsement. However, if this endorsement's coverage limits are higher than those of the endorsement it replaces, then the limitation described in (2) above applies only to the increase in coverage limits; or

   (3) any personal property other than a. through f. listed above.

c. The limit for this coverage shall not exceed $10,000 in any one occurrence.

The deductible for each loss under this coverage is the amount shown in the Declarations under DEDUCTIBLES – SECTION I or $1,000, whichever is greater.

For the purpose of this endorsement only, SECTION I – LOSSES INSURED, item 12.c. is deleted from the policy.

## SECTION I – LOSSES NOT INSURED

Item 2.c. Water is replaced by:

2. c. Water, meaning:

   (1) flood, surface water, waves (including tidal wave, tsunami, and seiche) tides, tidal water, overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not; except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Back-up of Sewer or Drain;

   (2) water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Back-up of Sewer or Drain;

   (3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure, or

   (4) material carried or otherwise moved by any of the water, as described in paragraphs (1) through (3) above.

   However, we do insure for any direct loss by fire, explosion or theft resulting from water, provided the resulting loss is itself a Loss Insured.

For the purpose of this endorsement only, SECTION I – CONDITIONS, Other Insurance is replaced by:

Other Insurance. This coverage is excess over other valid and collectible insurance.

All other policy provisions apply.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

Case 3:15-cv-00901 Document 1-1 Filed 08/17/15 Page 15 of 81 PageID #: 19

## FE-3530 HOMEOWNERS POLICY ENDORSEMENT (Tennessee)

### DEFINITIONS

Definitions 6. and 7. are replaced by the following:

6.  "motor vehicle", when used in Section II of this policy, means:

    a.  a land motor vehicle designed for travel on public roads or subject to motor vehicle registration;

    b.  a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

    c.  a "recreational vehicle" while off an insured location. "Recreational vehicle" means a motorized vehicle designed for recreation principally off public roads that is owned or leased by an insured. This includes, but is not limited to, a motorized all terrain vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike and personal assistive mobility device. "Leased" does not include temporary rental;

    d.  a "locomotive" while off an insured location. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an insured. "Leased" does not include temporary rental;

    e.  a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telahandler, logging vehicle, mining vehicle or road building vehicle that is owned or leased by an insured while off an insured location. "Leased" does not include temporary rental; and

    f.  any vehicle while being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.

    The following are not motor vehicles:

    a.  a boat, camp, home or utility trailer not being towed or pushed by or carried on a vehicle included in a., b., c., d. or e. above;

    b.  a motorized land vehicle in dead storage on an insured location;

    c.  a motorized golf cart while used for golfing purposes;

    d.  a motorized vehicle or trailer designed to assist the handicapped that is not designed for travel on public roads or subject to motor vehicle registration; or

    e.  a commercially manufactured 2, 3 or 4 wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

7.  "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which first results in:

    a.  bodily injury; or

    b.  property damage;

    during the policy period. All bodily injury and property damage resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one occurrence.

Definitions 11. and 12. are added:

11.  "fungus" means any type or form of fungus, including mold, mildew, mycotoxins, spores, scents or by-products produced or released by fungi.

12.  "State Farm Companies" means one or more of the following:

    a.  State Farm Mutual Automobile Insurance Company;

    b.  State Farm Fire and Casualty Company; and

    c.  subsidiaries or affiliates of either a. or b. above.

### SECTION I – COVERAGES

### COVERAGE A – DWELLING

Item 2., Dwelling Extension, is replaced by the following:

2.  Dwelling Extension. We cover other structures on the residence premises, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

    We do not cover other structures:

    a.  not permanently attached to or otherwise forming a part of the realty;

    b.  used in whole or in part for business purposes unless such use consists solely of use of office space for paperwork, computer work or use of a telephone, and consists solely of activities that are:

        (1)  duties of the insured's employment by another; and

        (2)  performed solely by the insured; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011
CONTINUED

c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

The following item is added to Item 3. Property Not Covered:

d. lawns or artificial grass, except as provided in SECTION I – ADDITIONAL COVERAGES.

### COVERAGE B – PERSONAL PROPERTY

Special Limits of Liability is replaced by the following:

Special Limits of Liability. These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

b. $1,500 on property used or intended for use in a business, including merchandise held as samples or for sale or for delivery after sale, while on the residence premises. This coverage is limited to $750 on such property away from the residence premises.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

c. $1,000 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d. $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,500 on trailers not used with watercraft;

f. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing system equipment, including but not limited to mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound, and standard media or non-media equipment for use with the above de vices;

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article; and

k. $500 on commercially manufactured 2, 3 or 4 wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include those not licensed for use on public highways which are designed for assisting the handicapped.

Item 2., Property Not Covered, is replaced by the following:

2. Property Not Covered. We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor-propelled vehicle or machine, including the parts, designed for movement on land, except as provided in Special Limits of Liability, item k. We do cover those not licensed for use on public highways which are:

(1) used solely to service the insured location; or

(2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of video or sound permanently attached to an engine or motor-propelled vehicle. We do not cover tapes, discs, wires, videos or other media that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other residents not related to an insured. We do cover property of roomers, boarders and other residents related to an insured;

g. property regularly rented or held for rental to others by an insured. This exclusion does not apply to property of an insured in a sleeping room rented to others by an insured;

h. property rented or held for rental to others away from the residence premises;

i. any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas and all other similar equipment permanently attached to an engine or motor-propelled vehicle;

j. books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems or other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011
CONTINUED

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market;

l. purchased or created data, sound or video that cannot be replaced with like kind and quality on the current retail market which is transferred or downloaded onto mobile communication equipment, global positioning systems or electronic devices used for the reproduction of video or sound;

m. contraband, or any property used in the course of illegal consumption, possession, import, export or trade; or

n. outdoor hardscape property used for aesthetic purposes except as provided in SECTION I – ADDITIONAL COVERAGES.

COVERAGE C – LOSS OF USE

Item 3., Prohibited Use, is replaced by the following:

3. Prohibited Use. We cover Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits your use of the residence premises, provided that:

a. direct physical damage occurs to any property, other than covered property located on the residence premises, arising from a cause of loss that would be a Loss Insured under this policy if the damage had occurred to property on the residence premises;

b. the residence premises is within one mile of property damaged by a cause of loss identified in 3.a. above; and

c. the action of the civil authority is taken in response to:

(1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

(2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

(3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

We do not cover loss or expense due to cancellation of a lease or agreement.

SECTION I – ADDITIONAL COVERAGES

Items 1., 3. and 11. are replaced by the following:

1. Debris Removal. We will pay the reasonable expenses you incur in the removal of debris of covered

property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

a. When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Landscaping.

b. We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the residence premises, unless otherwise excluded. This coverage applies when:

(1) the tree has caused a Loss Insured to Coverage A property; or

(2) the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

(a) the driveway, on the residence premises, and prevents land motor vehicle access to or from the dwelling; or

(b) a ramp designed to assist the handicapped, on the residence premises and prevents access to or from the dwelling.

3. Trees, Shrubs and Landscaping. We cover outdoor:

a. trees, shrubs, live or artificial plants, and lawns;

b. artificial grass; and

c. hardscape property used for aesthetic purposes not permanently affixed to realty;

on the residence premises, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the residence premises), Vandalism or malicious mischief or Theft.

The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the Declarations for COVERAGE A – DWELLING. We will not pay more than $750 for any one outdoor tree, shrub, plant or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for business purposes.

11. Collapse. We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011
CONTINUED

The collapse must be directly and immediately caused only by one or more of the following:

a. perils described in SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

b. decay, deterioration, insect damage or vermin damage, all that are hidden from view, of a:

(1) connector; or

(2) structural member of a building;

unless the presence of such damage is known to an insured prior to collapse;

c. weight of contents, equipment, animals or people;

d. weight of ice, snow, sleet or rain which collects on a roof, porch or deck; or

e. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf, dock, trellis or antenna or its supporting structure is not included under items b., c., d. and e. unless the loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

## SECTION I – LOSSES INSURED

The following is added to SECTION I – LOSSES INSURED:

We insure for accidental direct physical loss to property described in Coverages A and B caused by sinkhole collapse, meaning sudden settlement or collapse of the earth resulting from subterranean voids created by the action of water on limestone or similar rock formations. We do not insure against loss caused by abandonment of the property covered.

## COVERAGE B – PERSONAL PROPERTY

Items 9.b.(3)(c), 12.d., 13.b. and 15. are replaced by the following:

9. b. (3) (c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

12. d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

13. b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

15. Sudden and accidental damage to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,500 under this peril for each damaged item described above.

## SECTION I – LOSSES NOT INSURED

Items 1.i., 2.b, and 2.c. are replaced by the following:

1. i. wet or dry rot;

2. b. Earth Movement, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes, but is not limited to earthquake, landslide, mudflow, mudslide, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in SECTION I – ADDITIONAL COVERAGES, Volcanic Action.

However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

2. c. Water, meaning:

(1) flood, surface water, waves (including tidal wave, tsunami, and seiche), tides, tidal water, overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not;

(2) water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area;

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure; or

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011
CONTINUED

(4) material carried or otherwise moved by any of the water, as described in paragraphs (1) through (3) above.

However, we do insure for any direct loss by fire, explosion or theft resulting from water, provided the resulting loss is itself a Loss Insured.

The following item is added:

2. g. Fungus. We also do not cover:

(1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the residence premises or location of the rebuilding, repair or replacement, by fungus;

(2) any remediation of fungus, including the cost to:

(a) remove the fungus from covered property or to repair, restore or replace that property; or

(b) tear out and replace any part of the building or other property as needed to gain access to the fungus; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of fungus, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

## SECTION II — LIABILITY COVERAGES

## SECTION II – ADDITIONAL COVERAGES

Items 1.a., 1.c. and 1.d. are replaced by the following:

1. Claim Expenses. We pay:

a. expenses we incur and costs taxed against an insured in suits we defend. Taxed costs do not include attorney fees;

c. reasonable expenses an insured incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $200 per day for aiding us in the investigation or defense of claims or suits;

d. interest the insured is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

(1) that part of the damages we pay; or

(2) the Coverage L limit; and

## SECTION II – CONDITIONS

Item 1., Limit of Liability, is replaced by the following:

1. Limit of Liability. The Coverage L limit is shown in the Declarations. This is the limit for all damages from each occurrence for the policy period in which the bodily injury or property damage first occurs, regardless of the number of insureds, claims made or persons injured. No additional limits or coverage will be available for the occurrence under any additional policy periods while this policy remains in force.

The Coverage M limit is shown in the Declarations. This is our limit for all medical expense for bodily injury to one person as the result of one accident.

The following condition is added to item 4., Duties of an Injured Person – Coverage M:

d. the injured person or, when appropriate, someone acting on behalf of that person, shall:

(1) provide us with any required authorizations; and

(2) submit to us all information we need to comply with state or federal law.

## SECTION I AND SECTION II – CONDITIONS

The following conditions are added:

11. Premium.

a. Unless as otherwise provided by an alternative payment plan in effect with the State Farm Companies with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued Declarations.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles and other elements that affect the premium applicable at the time of renewal.

c. The premium for this policy may vary based upon:

(1) the purchase of other products or services from the State Farm Companies;

(2) the purchase of products or services from an organization that has entered into an agreement or contract with the State Farm Companies. The State Farm Companies do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

. ©, Copyright, State Farm Mutual Automobile Insurance Company, 2011
CONTINUED

(3) an agreement, concerning the insurance provided by this policy, that the State Farm Companies has with an organization of which you are a member, employee, subscriber, licensee, or franchisee.

d. Your purchase of this policy may allow:

(1) the premium or price for other insurance products purchased by you from the State Farm Companies to vary; or

(2) the price for non-insurance products or services purchased by you to vary. Such products or services must be provided by the State Farm Companies or by an organization that has entered into an agreement or contract with the State Farm Companies. The State Farm Companies do not warrant the merchantability, fitness or quality of any product or service offered or provided by that organization.

12. Right to Inspect. We have the right but are not obligated to perform the following:

a. make inspections and surveys of the insured location at any time;

b. provide you with reports on conditions we find; or

c. recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.

We do not:

a. make safety inspections;

b. undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

c. warrant that conditions are safe or healthful; or

d. warrant that conditions comply with laws, regulations, codes or standards.

This condition applies not only to us but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

13. Joint and Individual Interests. When there are two or more named insureds, each acts for all to cancel or change the policy.

14. Change of Policy Address. We may change the named insured's policy address as shown in the Declarations and in our records to the most recent address provided to us by:

a. you; or

b. the United States Postal Service.

OPTIONAL POLICY PROVISIONS

Option BP – Business Property is replaced by the following:

Option BP – Business Property. The COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability, item b., for property used or intended for use in a business, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the Declarations for this option.

Option HC – Home Computer is replaced by the following:

Option HC – Home Computer. The COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability, item i., is increased to be the amount shown in the Declarations for this option.

Option OL – Building Ordinance or Law.

Item 3.c. is replaced by the following:

c. legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law, if:

(1) the enforcement is directly caused by the same Loss Insured;

(2) the requirement is in effect at the time the Loss Insured occurs; and

(3) the legally required changes are made to the undamaged portions of specific dwelling features, systems or components that have been physically damaged by the Loss Insured.

We will not pay for legally required changes to specific dwelling features, systems or components that have not been physically damaged by the Loss Insured.

All other policy provisions apply.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2011

*teFarm*

# IMPORTANT NOTICE

Effective with this policy term, **FE-2340 AMENDATORY ENDORSEMENT** is added to your policy.

This notice summarizes the changes being made to your policy. Please read the new endorsement carefully and note the following changes:

### Potential Reduction in Coverage

Although not intended to change coverage, this change could potentially reduce or eliminate coverage depending on how it is interpreted and, in that regard, should be viewed as either an actual or potential reduction in or elimination of coverage.

- SECTION I – LOSSES NOT INSURED, item 1.f: Language is removed to establish that there is no coverage under this section for paying the cost to tear out and replace any part of a building necessary to repair the system or appliance from which water or steam escaped. However, coverage may be available under the new Tear Out provision located in Section I – Additional Coverages.

### Other Changes

- DECLARATIONS CONTINUED – Language is added to state we may adjust your premium during the policy period when you request changes, or the factors used in determining the premium change. If the premium increases, you must pay any additional premium.

- SECTION I AND SECTION II – CONDITIONS – Subrogation is now titled Subrogation and Reimbursement and the following changes are made:

  o Language is added under Subrogation to state that, as it relates to:

    – Section I – Your Property, if you have the right to recover damages from another, that right is automatically transferred to us up to the extent of our payment.

    – Section II – Your Liability, if you have the right to recover all or part of any payment we have made under this policy, those rights are automatically transferred to us.

  o Language is added under Reimbursement to state that, if we make payment under this policy and you receive payment from another person or organization, you must hold the proceeds in trust for us and reimburse us to the extent of our payment.

Endorsement **FE-2340** follows this notice. Please read it carefully and keep it with your policy. If you have any questions about the information in this notice, please contact your State Farm® agent.

This notice is provided for informational purposes only, and it does not change, modify or invalidate any of the provisions, terms or conditions of your policy, or any other applicable endorsements.

##  FE-2340 AMENDATORY ENDORSEMENT

### DECLARATIONS CONTINUED

The following is added:

When you request changes to this policy, or the information or factors used to calculate the premium for this policy changes during the policy period, we may adjust the premium in accordance with the change during the policy period and you must pay any additional premium due within the time we specify.

### SECTION I – ADDITIONAL COVERAGES

The following is added:

13. Tear Out. If a Loss Insured to Coverage A property is caused by water or steam escaping from a system or appliance, we will also pay the reasonable cost you incur to tear out and replace only that particular part of the building or condominium unit owned by you necessary to gain access to the specific point of that system or appliance from which the water or steam escaped. We will not cover the cost of repairing or replacing the system or appliance itself. This coverage does not increase the limit applying to Coverage A property.

### SECTION I – LOSSES NOT INSURED

Item 1.f. is replaced by the following:

f. continuous or repeated seepage or leakage of water or steam from a:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012

CONTINUED

2

(1) heating, air conditioning or automatic fire protective sprinkler system;

(2) household appliance; or

(3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time;

## SECTION I AND SECTION II – CONDITIONS

Item 8. is replaced by the following:

8. Subrogation and Reimbursement.

a. Subrogation.

(1) Applicable to SECTION I – YOUR PROPERTY:

If any insured to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That insured must do everything necessary to secure our rights and must do nothing after loss to impair them. But an insured may waive in writing before a loss all rights of recovery against any person.

(2) Applicable to SECTION II – YOUR LIABILITY:

If any insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. An insured must do nothing after loss to impair them. At our request, an insured will bring suit or transfer those rights to us and help us enforce them.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

b. Reimbursement.

If we make payment under this policy and any insured to or for whom we make payment recovers or has recovered from another person or organization, then the insured to or for whom we make payment must

(1) hold in trust for us the proceeds of any recovery; and

(2) reimburse us to the extent of our payment.

All other policy provisions apply.

FE-2340

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012



553-2300.4

# IMPORTANT INFORMATION . . .

## ABOUT ESTIMATING THE REPLACEMENT COST OF YOUR HOME OR STRUCTURE AND SELECTING YOUR COVERAGE AMOUNT

It's important to periodically review your State Farm® policy to make sure your coverages meet your needs. One important consideration is the comparison of your Coverage A limit to the current estimated replacement cost of your home or structure. The enclosed renewal notice lists your current coverages and limits. If you've remodeled, or made any other changes to your home or structure since you purchased your policy that might increase the replacement cost, it's important to update your coverage to reflect these changes.

An estimate of the replacement cost of an insured home or structure is used to establish its value for insurance purposes. It affects your premium, and what coverage options may be available. Replacement cost estimates can be obtained from a building contractor or a replacement cost appraisal. Estimates from these sources should reflect the features specific to your home or structure.

If you are unable to obtain a detailed estimate from either of these sources, your State Farm agent can assist you in preparing an Xactware™ replacement cost estimate for your home or structure. This estimating tool offers the flexibility to create an individualized estimate based on the specific features you provide about your home or structure. State Farm recently began using an updated version of the Xactware replacement cost estimating tool. If you would like a new estimate using an Xactware replacement cost estimate, please contact your agent.

State Farm does not guarantee that any type of estimate will represent the actual cost to rebuild your home or structure after a loss. Also, a replacement cost estimate does not dictate the amount of insurance coverage a policyholder must or may purchase. For many reasons, a policyholder may want to purchase more or less than the replacement cost estimate. State Farm allows you to choose the coverage limits that best fit your circumstances.

When a policy provides coverage on a replacement cost basis, following a covered loss, State Farm pays you the "replacement cost" that you actually and necessarily spend to repair or replace the damaged part of the property—subject to the terms of the policy and coverage limits. The replacement cost is not the market value, the purchase price, or the outstanding amount of any mortgage loan. It does not include the value of the land. Rather, replacement cost is the cost, subject to the terms of the policy, of repairing or rebuilding the damaged part of the insured structure, not including desired or required upgrades or improvements.

If a current replacement cost estimate of your home or structure is higher than your present Coverage A limit, we encourage you to increase your limit and insure your home or structure to at least its current estimated replacement cost. We also encourage you to periodically review your coverages and limits with your agent, and notify us of any changes or additions to your home or structure.

553-2300.4 (C)

Agent: BETHANY HARBIN CLU     (CONTINUED)     Telephone: (615) 356-6042 or (615) 356-5949
0703

553-2589.2

# RENEWAL OFFER – HIGHER DEDUCTIBLE

Choosing a higher deductible can reduce your premium.

State Farm® is offering you an option to choose a higher deductible. Your Balance Due Notice includes a premium quote based on a deductible higher than you currently have. You'll notice the premium for a higher deductible is less than your current renewal premium.

If you want to change to the higher deductible, simply follow the instructions on your Balance Due Notice. Please keep in mind that selecting a higher deductible will reduce your premium; however, you may be responsible for a greater portion of each covered loss.

Some lenders may not allow higher deductibles. If you have a loan on your property, check with your lender to see if they have any restrictions.

If you have any questions about your deductible, payment options, or if you're interested in other available deductible options, please contact your State Farm agent.

553-2589.2 (G)

553-3143

# IMPORTANT NOTICE . . . Information Regarding Your Premium

Claims and information from other State Farm® policies in your household may have been used to determine the premium shown. A policy may be considered "in your household" if, according to our records, the policy has a name and address in common with this policy.

Consumer reports may also be used to determine the price you are charged. We may obtain and use a credit-based insurance score developed from information contained in these reports. We may use a third party in connection with the development of your insurance score.

553-3143 (C)        (10/09)

gent: BETHANY HARBIN CLU                    Telephone: (615) 356-6042 or (615) 356-5949
(CONTINUED)
Case 3:15-cv-00901  Document 1-1  Filed 08/17/15   Page 25 of 81 PageID #: 29



553-2948



# NOTICE TO POLICYHOLDER

For a comprehensive description of coverages and forms, please refer to your policy.

Policy changes that you requested before the "Date Prepared" on your Renewal Certificate are effective on the renewal date of this policy unless indicated otherwise by a separate endorsement, binder or Amended Declarations Page. Any coverage forms or endorsements included with your Renewal Certificate are effective on the renewal date of this policy.

Policy changes that you requested after the "Date Prepared" on your Renewal Certificate will be sent to you as an Amended Declarations Page or as an endorsement to your policy. You will be billed for any resulting premium increase later.

If you have acquired any valuable property items, made any improvements to your home, or have questions about your insurance coverage, please contact your State Farm® agent.

553-2948 (C)          (10/08)                                                                 553-2798

# IMPORTANT NOTICE . . . Discounts and Rating

The longer you are insured with State Farm® and the fewer claims you have, the lower your premium. For policyholders insured by State Farm for three or more years, the Claim Free Discount Plan provides a premium discount if you have not had any claims considered for the Plan in the most recent three-year period since becoming insured with State Farm. Premium adjustments under the Claim Record Rating Plan are based on the number of years you have been insured with State Farm and on the number of claims that we consider for the Plan. Depending on the Plan(s) that applies in your state/province, claims considered for the Plans generally include claims resulting in a paid loss and may include weather-related claims. Additionally, depending on your state/province's plan and your tenure with State Farm, any claims with your prior insurer resulting in property damage or injury may also influence your premium. For further information about whether a Claim Free Discount is in effect in your state/province, the Claim Record Rating Plan that applies in your state/province, and the claims we consider for the Plans, please contact your State Farm agent.

553-2798 (C)          (10/07)

**&&** *StateFarm*

is policy is one of the broadest forms avail-
le today, and provides you with outstanding
ue for your insurance dollars. However,
want to point out that every policy contains
itations and exclusions. Please read your
icy carefully, especially "Losses Not Insured"
d all exclusions.

State Farm®
**Homeowners**
Policy

FP-7955 KT

## COVER SHEET

This cover sheet provides a convenient summary of the policy provisions.

Your policy, including the endorsements and the attached papers, if any, constitutes a legal contract of insurance between you and us.

READ YOUR POLICY CAREFULLY. This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.

## INDEX OF MAJOR PROVISIONS

**Begins on Page**

| DECLARATIONS | | | |
|---|---|---|---|
| Your Name | Policy Period | Limits of Liability | Declarations Page |
| Location of Your Residence | Coverages | Deductibles | |

DECLARATIONS CONTINUED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SECTION I - YOUR PROPERTY
COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Coverage A - Dwelling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Coverage B - Personal Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Coverage C - Loss of Use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    Additional Coverages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Inflation Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
LOSSES INSURED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
LOSSES NOT INSURED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
LOSS SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

SECTION II - YOUR LIABILITY
COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    Coverage L - Personal Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    Coverage M - Medical Payments to Others . . . . . . . . . . . . . . . . . . . . . . 15
    Additional Coverages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

SECTION I AND SECTION II - CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . 19

OPTIONAL POLICY PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983

FP-7955 KT
(4/97)

Printed in U.S.A.

# HOMEOWNERS POLICY

## DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these **Declarations.**

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you have not had any losses, insured or not; and

2. Insurance History: you have not had any insurer or agency cancel or refuse to issue or renew similar insurance to you or any household member.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the Declarations. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the Declarations.

Certain words and phrases are defined as follows:

1. "bodily injury" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

   Bodily injury does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. "business" means a trade, profession or occupation. This includes farming.

3. "Declarations" means the policy Declarations, any amended Declarations, the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

4. "insured" means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, "insured" also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a business, or without permission of the owner, is not an **insured**; and

FP-7955 KT

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5. "insured location" means:

a. the residence premises;

b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

c. any premises used by you in connection with the premises included in 5.a. or 5.b.;

d. any part of a premises not owned by an insured but where an insured is temporarily residing;

e. land owned by or rented to an insured on which a one or two family dwelling is being constructed as a residence for an insured;

f. individual or family cemetery plots or burial vaults owned by an insured;

g. any part of a premises occasionally rented to an insured for other than business purposes;

h. vacant land owned by or rented to an insured. This does not include farm land; and

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

6. "motor vehicle", when used in Section II of this policy. means:

a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an insured location is not a motor vehicle;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by

or carried on a vehicle included in 6.a. is not a motor vehicle;

c. a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle or any other similar type equipment owned by an insured and designed or used for recreational or utility purposes off public roads, while off an insured location. A motorized golf cart while used for golfing purposes is not a motor vehicle; and

d. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b. or 6.c.

7. "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. bodily injury; or

b. property damage;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

8. "property damage" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any insured is not property damage.

9. "residence employee" means an employee of an insured who performs duties, including household or domestic services, in connection with the maintenance or use of the residence premises. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the business of an insured.

10. "residence premises" means:

a. the one, two, three or four-family dwelling, other structures and grounds; or

b. that part of any other building;

where you reside and which is shown in the Declarations.

FP-7955 KT

Case 3:15-cv-00901 Document 1-1 Filed 08/17/15 Page 30 of 81 PageID #: 34

**COVERAGE A - DWELLING**

1. **Dwelling.** We cover the dwelling used principally as a private residence on the **residence premises** shown in the Declarations.

   Dwelling includes:

   a. structures attached to the dwelling;

   b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**;

   c. foundation, floor slab and footings supporting the dwelling; and

   d. wall-to-wall carpeting attached to the dwelling.

2. **Dwelling Extension.** We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. **Property Not Covered.** We do not cover:

   a. land, including the land necessary to support any Coverage A property;

   b. any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

   c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

**COVERAGE B - PERSONAL PROPERTY**

1. **Property Covered.** We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured**. At your request, we will also cover personal property owned by a guest or a **residence employee**, while the property is in any other residence occupied by an **insured**.

We cover personal property usually situated at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

b. $1,000 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $250 on such property away from the **residence premises**.

   Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,000 on trailers not used with watercraft;

Case 3:15-cv-00901   Document 1-1   Filed 08/17/15   Page 31 of 81 PageID #: 35

f. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the residence premises except when said equipment or media are removed from the residence premises for the purpose of repair, servicing or temporary use. An insured student's equipment and media are covered while at a residence away from home; and

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. Property Not Covered. We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

(1) used solely to service the insured location; or

(2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of sound permanently attached to an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other residents not related to an insured. We do cover property of roomers, boarders and other residents related to an insured;

g. property regularly rented or held for rental to others by an insured. This exclusion does not apply to property of an insured in a sleeping room rented to others by an insured;

h. property rented or held for rental to others away from the residence premises;

i. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

j. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

## COVERAGE C - LOSS OF USE

1. Additional Living Expense. When a Loss Insured causes the residence premises to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

2. Fair Rental Value. When a Loss Insured causes that part of the residence premises rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the residence premises rented or held for rental is uninhabitable.

3. Prohibited Use. When a civil authority prohibits your use of the residence premises because of direct damage to a neighboring premises by a Loss Insured, we will cover any resulting Additional Living Expense and Fair Rental

Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

1. Debris Removal. We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

   When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Other Plants.

   We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the residence premises when the tree has caused a Loss Insured to Coverage A property.

2. Temporary Repairs. If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. Trees, Shrubs and Other Plants. We cover outdoor trees, shrubs, plants or lawns, on the residence premises, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the residence premises), Vandalism or malicious mischief or Theft.

   The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the Declarations for COVERAGE A - DWELLING. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for business purposes.

4. Fire Department Service Charge. We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. Property Removed. Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.

   a. We will pay up to $1,000 for:

      (1) the legal obligation of an insured to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an insured's name. If an insured has not complied with all terms and conditions under which the cards are issued, we do not cover use by an insured or anyone else;

      (2) loss to an insured caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an insured through acceptance in good faith of counterfeit United States or Canadian paper currency.

      No deductible applies to this coverage.

      We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

   b. We do not cover loss arising out of business pursuits or dishonesty of an insured.

   c. Defense:

      (1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when

5

the amount we pay for the loss equals our limit of liability.

   (2) If claim is made or a suit is brought against an insured for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

   (3) We have the option to defend at our expense an insured or an insured's bank against any suit for the enforcement of payment under the Forgery coverage.

7. Power Interruption. We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the residence premises. The power interruption must be caused by a Loss Insured occurring on the residence premises. The power lines off the residence premises must remain energized. This coverage does not increase the limit applying to the damaged property.

8. Refrigerated Products. Coverage B is extended to cover the contents of deep freeze or refrigerated units on the residence premises for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

   a. removal of a plug from an electrical outlet; or

   b. turning off an electrical switch unless caused by a Loss Insured.

   This coverage does not increase the limit applying to the damaged property.

9. Arson Reward. We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. Volcanic Action. We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

   a. volcanic blast or airborne shock waves;

   b. ash, dust or particulate matter; or

   c. lava flow.

   We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

   One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

   This coverage does not increase the limit applying to the damaged property.

11. Collapse. We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

   Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

   The collapse must be directly and immediately caused only by one or more of the following:

   a. perils described in SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

   b. hidden decay of a supporting or weight-bearing structural member of the building;

   c. hidden insect or vermin damage to a structural member of the building;

   d. weight of contents, equipment, animals or people;

   e. weight of ice, snow, sleet or rain which collects on a roof; or

   f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the

6

Case 3:15-cv-00901   Document 1-1   Filed 08/17/15   Page 34 of 81 PageID #: 38

loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

12. Locks. We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the residence premises, when the keys to those locks are a part of a covered theft loss.

No deductible applies to this coverage.

## INFLATION COVERAGE

The limits of liability shown in the Declarations for Coverage A, Coverage B and, when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the Declarations.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the Declarations.

If during the term of this policy the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

# SECTION I - LOSSES INSURED

## COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I - LOSSES NOT INSURED.

## COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in SECTION I - LOSSES NOT INSURED:

1. Fire or lightning.

2. Windstorm or hail. This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. Explosion.

4. Riot or civil commotion.

5. Aircraft, including self-propelled missiles and space-craft.

6. Vehicles, meaning impact by a vehicle.

7. Smoke, meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. Vandalism or malicious mischief, meaning only willful and malicious damage to or destruction of property.

9. Theft, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

This peril does not include:

a. loss of a precious or semi-precious stone from its setting;

b. loss caused by theft:

(1) committed by an insured or by any other person regularly residing on the insured location. Property of a student who is an insured is covered while located at a residence away from home, if the theft is committed by a person who is not an insured;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

FP-7955 KT

Case 3:15-cv-00901   Document 1-1   Filed 08/17/15   Page 35 of 81 PageID #: 39

the amount we pay for the loss equals our limit of liability.

(2) If claim is made or a suit is brought against an insured for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

(3) We have the option to defend at our expense an insured or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the residence premises. The power interruption must be caused by a Loss Insured occurring on the **residence premises.** The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Volcanic Action.** We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. volcanic blast or airborne shock waves;

b. ash, dust or particulate matter; or

c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

The collapse must be directly and immediately caused only by one or more of the following:

a. perils described in SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

b. hidden decay of a supporting or weight-bearing structural member of the building;

c. hidden insect or vermin damage to a structural member of the building;

d. weight of contents, equipment, animals or people;

e. weight of ice, snow, sleet or rain which collects on a roof; or

f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the

6

FP-7955 KT

(3) from the part of a residence premises rented to others:

    (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

    (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

    (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

    (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

c. loss caused by theft that occurs away from the residence premises of:

    (1) property while at any other residence owned, rented to, or occupied by an insured, except while an insured is temporarily residing there. Property of a student who is an insured is covered while at a residence away from home;

    (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

    (3) trailers and campers designed to be pulled by or carried on a vehicle.

If the residence premises is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the residence premises for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow of water** or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the residence premises while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

B

Case 3:15-cv-00901 Document 1-1 Filed 08/17/15 Page 37 of 81 PageID #: 41

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the residence premises. There is no coverage for loss or damage to the glass.

## SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Collapse;**

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

   e. vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   f. continuous or repeated seepage or leakage of water or steam from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

      which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

   g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   h. corrosion, electrolysis or rust;

   i. mold, fungus or wet or dry rot;

   j. contamination;

   k. smog, smoke from agricultural smudging or industrial operations;

   l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

   m. birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals; or

9

Case 3:15-cv-00901 Document 1-1 Filed 08/17/15 Page 38 of 81 PageID #: 42

n. pressure from or presence of tree, shrub or plant roots.

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

b. **Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Volcanic Action.**

However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

c. **Water Damage,** meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove

subsurface water which is drained from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d. **Neglect,** meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War,** including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f. **Nuclear Hazard,** meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

c. weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

## SECTION I - LOSS SETTLEMENT

Only the Loss Settlement provisions shown in the Declarations apply. We will settle covered property losses according to the following.

### COVERAGE A - DWELLING

1. **A1 - Replacement Cost Loss Settlement - Similar Construction.**

   a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

      (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;

      (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

      (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

      (4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

   b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

2. **A2 - Replacement Cost Loss Settlement - Common Construction.**

   a. We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

      (1) we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

      (2) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or

FP-7955 KT

replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;

(4) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(5) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

## COVERAGE B - PERSONAL PROPERTY

### 1. B1 - Limited Replacement Cost Loss Settlement.

a. We will pay the cost to repair or replace property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

(2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have

actually and necessarily spent to repair or replac the property; and   .

(3) if property is not repaired or replaced within tw years after the date of loss, we will pay only th cost to repair or replace less depreciation.

b. We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and simila articles which by their inherent nature cannot b replaced with new articles;

(2) articles whose age or history contribute substan tially to their value including, but not limited to memorabilia, souvenirs and collectors items; anc

(3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

### 2. B2 - Depreciated Loss Settlement.

a. We will pay the cost to repair or replace less depreciation at the time of loss for property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below.

b. We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

FP-7955 KT

Case 3:15-cv-00901   Document 1-1   Filed 08/17/15   Page 41 of 81 PageID #: 45

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applisable Coverage B limit of liability.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies;

      (3) submit to and subscribe, while not in the presence of any other **insured**:

         (a) statements; and

         (b) examinations under oath; and

   (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

   e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of this policy;

      (5) specifications of any damaged building and detailed estimates for repair of the damage;

      (6) an inventory of damaged or stolen personal property described in 2.c.;

      (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

      (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between the depreciated value of the property before and after the loss.

13

FP-7955 KT

Case 3:15-cv-00901   Document 1-1   Filed 08/17/15   Page 42 of 81 PageID #: 46

4. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

7. **Our Option.** We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

8. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. reach agreement with you;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

9. **Abandonment of Property.** We need not accept any property abandoned by an insured.

10. **Mortgage Clause.** The word "mortgagee" includes trustee.

   a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

   b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

     (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

     (2) pays on demand any premium due under this policy, if you have not paid the premium; and

     (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

   c. If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect. Proof of mailing shall be proof of notice.

   d. If we pay the mortgagee for any loss and deny payment to you:

     (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

     (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

   e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for

14

Case 3:15-cv-00901 Document 1-1 Filed 08/17/15 Page 43 of 81 PageID #: 47

a fee. This applies regardless of any other provision of this policy.

12. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered

under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other insured for this loss.

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

### COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the bodily injury:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a residence employee in the course of the residence employee's employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises

out of or in the course of the **residence employee's** employment by an **insured**.

### SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against an insured in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured.**

3. **Damage to Property of Others.**

   a. We will pay for **property damage** to property of others caused by an **insured.**

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

(3) $500 in any one **occurrence**.

c. We will not pay for **property damage**:

    (1) if insurance is otherwise provided-in this policy;

    (2) caused intentionally by an **insured** who is 13 years of age or older;

    (3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

(4) arising out of:

    (a) **business** pursuits;

    (b) any act or omission in connection with premises an **insured** owns, rents or controls other than the **insured location**; or

    (c) the ownership, maintenance, or use of a mo tor **vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sa board or similar type watercraft.

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

a. **bodily injury** or **property damage**:

    (1) which is either expected or intended by the in- **sured**; or

    (2) which is the result of willful and malicious acts of the **insured**;

b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

    (1) to activities which are ordinarily incident to non- **business** pursuits;

    (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

    (3) to the rental or holding for rental of a **residence** of yours:

        (a) on an occasional basis for the exclusive use as a **residence**;

        (b) in part, unless intended for use as a resi- dence by more than two roomers or boarders; or

        (c) in part, as an office, school, studio or private garage;

    (4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you oc-

cupy one part and rent or hold for rental the othe part; or

    (5) to farm land (without buildings), rented or held fo rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

d. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence** employee arising out of and in the course of the **residence** employee's employment by an **insured**;

e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

    (1) an aircraft;

    (2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

    (3) a watercraft:

        (a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

        (b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

FP-7955 KT

does not apply to property damage caused by fire, smoke or explosion;

d. bodily injury to a person eligible to receive any benefits required to be provided or voluntarily provided by an insured under a workers' compensation, non-occupational disability, or occupational disease law;

e. bodily injury or property damage for which an insured under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to bodily injury:

a. to a residence employee if it occurs off the insured location and does not arise out of or in the course of the residence employee's employment by an insured;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to a person other than a residence employee of an insured, regularly residing on any part of the insured location.

## SECTION II - CONDITIONS

1. Limit of Liability. The Coverage L limit is shown in the Declarations. This is our limit for all damages from each occurrence regardless of the number of insureds, claims made or persons injured.

The Coverage M limit is shown in the Declarations. This is our limit for all medical expense for bodily injury to one person as the result of one accident.

2. Severability of Insurance. This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence.

3. Duties After Loss. In case of an accident or occurrence, the insured shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

a. give written notice to us or our agent as soon as practicable, which sets forth:

(1) the identity of this policy and insured;

(2) reasonably available information on the time, place and circumstances of the accident or occurrence; and

(3) names and addresses of any claimants and available witnesses;

b. immediately forward to us every notice, demand, summons or other process relating to the accident or occurrence;

c. at our request, assist in:

(1) making settlement;

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an insured;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under the coverage - Damage to Property of Others, exhibit the damaged property if within the insured's control; and

e. the insured shall not, except at the insured's own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the bodily injury.

18

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

a. give us written proof of claim, under oath if required, as soon as practicable;

b. execute authorization to allow us to obtain copies of medical reports and records; and

c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or bodily **injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. Proof of mailing shall be sufficient proof of notice:

(1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

(a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

19

Case 3:15-cv-00901 Document 1-1 Filed 08/17/15 Page 47 of 81 PageID #: 51

(b) if the risk has changed substantially since the policy was issued.

We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations.** The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

a. sign and deliver all related papers;

b. cooperate with us in a reasonable manner; and

c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person shown in the **Declarations** or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. **insured** includes:

(1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises;** and

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the Declarations and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option AI - Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the Declarations as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the **residence premises.** This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the Declarations.

**Option BP - Business Property.** The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item b., for property used or intended for use in a business,

20

Case 3:15-cv-00901   Document 1-1   Filed 08/17/15   Page 48 of 81 PageID #: 52

including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,000 limit is replaced with the amount shown in the Declarations for this option.

**Option BU - Business Pursuits.** SECTION II - EXCLUSIONS, item 1.b. is modified as follows:

1. Section II coverage applies to the business pursuits of an **insured** who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

   while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

   a. for **bodily injury** or **property damage** arising out of a business owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

   b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

      (1) computer programming, architectural, engineering or industrial design services;

      (2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

      (3) beauty or barber services or treatment;

   c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

   d. when the **insured** is a member of the faculty or teaching staff of a school or college:

      (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

         (a) draft or saddle animals, including vehicles for use with them; or

         (b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

         owned or operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

      (2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA - Firearms.** Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, gradual deterioration;

   b. insects or vermin;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling or explosion of firearms;

   g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

   h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

21

Case 3:15-cv-00901   Document 1-1   Filed 08/17/15   Page 49 of 81 PageID #: 53

2. our limit for loss by any Coverage B peril except theft is the limit shown in the Declarations for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the Declarations for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the Declarations.

**Option HC - Home Computer.** The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item i., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the Declarations for this option.

**Option ID - Increased Dwelling Limit.** We will settle losses to damaged building structures covered under COVERAGE A - DWELLING according to the SECTION I - LOSS SETTLEMENT provision shown in the Declarations.

If the amount you actually and necessarily spend to repair or replace damaged building structures exceeds the applicable limit of liability shown in the Declarations, we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the Declarations to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under COVERAGE A - DWELLING, Dwelling Extension.

**Report Increased Values.** You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the Declarations, if you fail to notify us of the increased value within 90 days.

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental business occupancy on file with us.

1. COVERAGE A - DWELLING, Dwelling Extension, item 2.b. is deleted.

2. COVERAGE B - PERSONAL PROPERTY is extended to include equipment, supplies and furnishings usual and incidental to this business occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the Declarations. The first limit applies to property on the residence premises. The second limit applies to property while off the residence premises. These limits are in addition to the COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability on property used or intended for use in a business.

3. Under Section II, the residence premises is not considered business property because an insured occupies a part of it as an incidental business.

4. SECTION II - EXCLUSIONS, item 1.b. of Coverage L and Coverage M is replaced with the following:

b. bodily injury or property damage arising out of business pursuits of an insured or the rental or holding for rental of any part of any premises by an insured. This exclusion does not apply:

(1) to activities which are ordinarily incident to non-business pursuits or to business pursuits of an insured which are necessary or incidental to the use of the residence premises as an incidental business;

(2) with respect to Coverage L to the occasional or part-time business pursuits of an insured who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an incidental business or private garage;

(4) when the dwelling on the residence premises is a two family dwelling and you occupy

22

Case 3:15-cv-00901 Document 1-1 Filed 08/17/15 Page 50 of 81 PageID #: 54

one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

5. This insurance does not apply to:

a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a residence employee while engaged in the employee's employment by an **insured**;

b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

d. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of bodily injury to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a. mechanical breakdown, wear and tear, gradual deterioration;

b. insects or vermin;

c. inherent vice; or

d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations** for this option.

23

FP-7955 KT

## Option OL - Building Ordinance or Law.

### 1. Coverage Provided.

The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the Declarations of the Coverage A limit shown in the Declarations at the time of the loss, as adjusted by the inflation coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

### 2. Damaged Portions of Dwelling.

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

### 3. Undamaged Portions of Damaged Dwelling.

When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will also pay for:

a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

(1) the enforcement is directly caused by the same Loss Insured;

(2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

(3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premise and

(4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

### 4. Building Ordinance or Law Coverage Limitations.

a. We will not pay for any increased cost of construction under this coverage:

(1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

(2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

(1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

(2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.

c. We will not pay more under this coverage than the amount you actually spend:

(1) for the increased cost to repair or rebuild the dwelling at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

(2) to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

24

FP-7955 KT

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

Option SG - Silverware and Goldware Theft. The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item h., for theft of silverware and goldware is increased to be the amount shown in the Declarations for this option.

IN WITNESS WHEREOF, this Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Lynne M. Youkell* Secretary        *Edward BRunt Jr* President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

FP-7955 KT

Case 3:15-cv-00901   Document 1-1   Filed 08/17/15   Page 53 of 81 PageID #: 57



# SMITH KLING THOMPSON

May28 , 2015

Via Fax: (888) 898-6215/ (207) 793-7113/mail
Claims Department
State Farm Insurance Company
PO Box 661034
Dallas, TX 75266

|  |  |  |
|---|---|---|
| *Re:* | *Insured's:* | Majors, Sarah & Leppikangas, Pasi |
|  | *Claim No.:* | 42-558X-979 |
|  | *Date of Loss:* | 03/18/2014 |
|  | *Subject Property:* | 1220 Wax Wing Circle, Kingston Springs TN 37082 |

Please be advised that my firm has been retained by Mr. Leppikangas,and Mrs. Majors to represent them in all aspects of the above styled claim. My office has been provided a copy of Mr. Leppikangas, and Mrs.Majors's denial letter. Please be advised that State Farm Insurance Company's denial of Mr Leppikangas,. and Mrs. Majors claim is disputed, and please accept this letter as a request that the claim be reopened for further review by management or as otherwise may be appropriate. Additionally, as it is not currently in our possession, allow this letter to serve as our request for Mr. Leppikangas, and Mrs.Majors' certified policy of insurance which was valid during the above referenced claim.

This letter will also serve the purpose of making a **formal demand** for payment authorized pursuant to T.C.A. § 56-7-105. In that regard, Mr. Leppikangas, and Mrs. Majors' hereby give formal demand that the insurance policy issued by State Farm be honored and that Mr. Leppikangas, and Mrs. Majors' claim be paid in full. This demand is being made so that State Farm s has an opportunity to reconsider its decision on the claim; to give notice of their intent to assert a bad faith claim if it is not paid in full; and to memorialize the fact that a lawsuit will be filed to enforce the insurance contract at issue, plus damages for bad faith as authorized by statute, if the claim is not paid in full. I would request a response within ten (10) days of this letter.

In the event State Farm fails to confirm coverage and restore the Insured's' property to its pre-loss condition, my office is in the process of preparing a complaint in this matter and the Insured's will file suit and seek a statutory bad faith penalty. As such, please respond accordingly.

Sincerely,

*Thomas W. Thompson*

Thomas W. Thompson, Esquire
*(Signed electronically in his absence to avoid delay)*

TWT/nt

**EXHIBIT**
B



IN THE CIRCUIT COURT FOR CHEATHAM COUNTY, TENNESSEE

SARAH MAJORS and )
PASI LEPPIKANGAS )
  )
Plaintiffs, )
  )
v. )
  )
STATE FARM FIRE )
AND CASUALTY COMPANY, )
  )
Defendant. )
_____ )

**FILED**

JUL 07 2015

JULIE HIBBS
CIRCUIT COURT CLERK

JURY DEMAND

Case No. $6351$

## PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS TO DEFENDANT

COME NOW the Plaintiffs, **SARAH MAJORS and PASI LEPPIKANGAS,**

(hereinafter referred to as "Plaintiffs"), by and through the undersigned counsel, and pursuant to

Rule 36.01 of the Tennessee Rules of Civil Procedure, hereby requests Defendant, **STATE**

**FARM FIRE AND CASUALTY COMPANY,** ("Defendant"), respond to Plaintiffs' First

Request for Admissions to Defendant within forty-five (45) days of the date of service and admit

or deny the following:

1. That all times material hereto, Plaintiffs were and are the owners of that certain real property located at **1220 Wax Wing Circle, Kingston Springs, Tennessee 37082,** (hereinafter referred to as "Insured Property").

2. That Defendant issued or renewed a policy of homeowner's insurance, **Policy Number** 42GM6084-7, (hereinafter referred to as the "Policy") to Plaintiffs on the Insured Property.

3. That at all times material hereto, the subject Policy of homeowners' insurance was/is in effect for the Insured Property.

4. That the above-referenced Policy of insurance covers any and all damage to the Insured Property that was caused by sinkhole activity.

5. That **Policy Number** 42GM6084-7 is an all-risk policy.

6.    That there is damage to the structure located at the Insured Property.

7.    That Plaintiff first reported damage to the home on or about **March 18, 2014**, while the above-referenced Policy was in effect.

8.    That Defendant unilaterally retained **Rimkus Consulting Group, Inc.,** (hereinafter "**Rimkus**") to determine if a probable geotechnical cause of the distress at the Insured Property could be determined and, if so, to make repair recommendations.

9.    That **Rimkus** determined that the damage to the Insured Property could not have been caused by sinkhole activity.

10.   That **Rimkus'** inspection of the Plaintiffs' Property was inconsistent with sinkhole testing standards.

11.   That Defendant failed to consult with Plaintiffs in its retention of **Rimkus** to perform the subsidence investigation.

12.   That Defendant relied upon **Rimkus'** Subsidence Investigation Report and the recommendations contained therein to deny Plaintiffs' claim.

13.   That Defendant relied upon the above-referenced report of **Rimkus** and the recommendations contained therein, in refusing to pay all benefits owed under the policy and related to Plaintiffs' claim.

14.   That the duty to ensure a subsidence investigation compliant with Tennessee Statute § 56-7-130 7 lies with Defendant.

15.   That Plaintiffs have complied with all conditions precedent to obtaining benefits under Plaintiffs' Policy of homeowner's insurance from Defendant.

16.   That Plaintiffs have complied with all conditions precedent to the maintenance of this action.

17.   That subject to applicable limits, Plaintiffs are entitled to the full cost of repairs of the damage to their home, including the cost of remediation of subsurface conditions and restoration of the foundation.

18.   That Defendant has breached its policy of insurance by failing to pay all benefits to Plaintiffs for claim of damages to the home located at Insured Property.

19. That if the Insured Property cannot be repaired properly within the applicable coverage limits, the loss shall be deemed a total loss, and Plaintiffs are entitled to be paid an amount equal to such coverage limits.

20. That Defendant owes prejudgment interest, expert fees, costs, and attorneys' fees of this action.

21. That an expert retained by Defendant or on behalf of Defendant, during the past three (3) years, has confirmed sinkhole activity within a one (1) mile radius of the Plaintiffs' home.

22. That Defendant has failed to comply with all of the statutory requirements of Tennessee Statute 56-7-130.

23. That there exists a bona fide coverage dispute between Plaintiffs and Defendant regarding the appropriate and structurally necessary method of remediation and repair required to properly stabilize subsurface conditions and restore the foundation beneath Plaintiffs' home.

24. That Defendant has previously been found guilty of bad faith pursuant to Tennessee Statute 56-7-105.

25. That Defendant refused to pay all benefits owed under the policy and related to Plaintiffs' claim.

26. That Defendant's failure to pay for the sinkhole loss in this case rises to a level of a general business practice.

27. That the memos and letters in the claims file correctly reflect the communications between the Defendant and the other parties regarding this claim.

28. That Defendant acted with reckless disregard for the insureds' rights.

29. That Defendant failed to perform a statutorily compliant sinkhole investigation before denying Plaintiffs' claim.

30. That Defendant's initial claim investigation did not meet the minimum standards in investigating a claim required by Tennessee Statute § 56-7-130.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** a true and correct copy of the foregoing Request for Admissions has been served contemporaneously with Plaintiffs' Complaint and Responses to same are due within forty-five (45) days from the date of service.

By: ___/s/ Thomas W. Thomson_____
***Smith, Kling, & Thompson, P.A.***
Thomas W. Thompson, Esquire
BPR: 030659
Primary Email: mrivera@smithkling.com
4725 N. Lois Avenue
Tampa, Florida 33614
Telephone: 813.254.1800
Facsimile: 813.254.1844
Attorney for Plaintiffs

IN THE CIRCUIT COURT FOR CHEATHAM COUNTY, TENNESSEE

SARAH MAJORS and ) 
PASI LEPPIKANGAS ) 
 ) 
    Plaintiffs, ) 
 ) 
v. ) 
 ) 
STATE FARM FIRE ) 
AND CASUALTY COMPANY, ) 
 ) 
    Defendant. ) 

**FILED**

JUL 0 7 2015

JULIE HIBBS
CIRCUIT COURT CLERK

**JURY DEMAND**

Case No. $\underline{0\,35\backslash}$

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION TO DEFENDANT

**COME NOW** the Plaintiffs, **SARAH MAJORS and PASI LEPPIKANGAS**, (hereinafter referred to as "Plaintiffs"), by and through the undersigned counsel, and pursuant to Rule 34.01 of the Tennessee Rules of Civil Procedure, hereby request that Defendant, **STATE FARM FIRE AND CASUALTY COMPANY**, produce for inspection, copying or photographing at the office of Smith, Kling, & Thompson, P.A., 4725 N. Lois Avenue, Tampa, Florida 33614 within forty-five (45) days from the date of service, or at such other time and place as may be agreed upon between counsel, all documents and things in the possession, custody or control of Defendant, which are responsive to the requests contained in the numbered paragraphs below:

### I. DEFINITIONS AND INSTRUCTIONS

A.     As used herein, "Defendant," "you" or "your" shall mean Defendant, **STATE FARM INSURANCE COMPANY**, its affiliates, partners, agents, servants, employees, attorneys, expert witnesses, accountants, auditors, and all persons or entities over which Defendant has

control or have been hired retained or employed for any purpose by it, whether directly by it or through any other person or entity.

B.     As used herein, the term "document" or "documents" shall be defined to include any and all documents, memoranda (including written memoranda of telephone conversations, oral communications, discussions, agreements, acts or activities), letters, postcards, telegrams, messages (including telephone messages), facsimiles, intra-and interoffice communications, correspondence, handwritten and/or typewritten notes, pamphlets , diaries, records of any kind, sound recordings, contracts, agreements, books, letters, reports, catalogues, financial statements, receipts, invoices, billing statements (including credit card and telephone statements), purchase orders, proposals, affidavits, advertisements, solicitations, indices, data processing cards, other data processing materials, data, maps, directives, desk pads, calendars, scrap books, notebooks, drawings, diagrams, sketches, statistical records, appointment books, diaries, computer printouts, data processing input and output, computer input and output, e-mail, microfilms, other records kept by electronic, photographic or mechanical means, and writing of every kind and character, including preliminary drafts and other copies of the foregoing, however, produced or reproduced. If multiple copies of a document exist, each copy which is any way not completely identical to a copy which is being produced should also be produced.

C.     As employed herein, "all documents" shall refer to and shall include every document as above-defined, known to you and every such document or thing that can be located or discovered by reasonable diligent efforts, whether or not originally in your custody, possession or control.

D.     When producing the requested documents and things, please produce same as they are kept in the usual course or business or label them to correspondence with the categories of this request for production.

E.  If you claim a privilege as to any documents or thing encompassed by this request for production, you are requested to make the claim expressly and describe the nature of the documents, communications or things not produced or disclosed in manner that without revealing information itself protection claimed.

F.  The words "relating to" mean concerning, respecting, referring to, summarizing, digesting, embodying, reflecting, establishing, tending to establish, tending not to establish, evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting, or including.

## II.  DOCUMENTS TO BE PRODUCED

1.  All reports, drafts, charts, drawings, diagrams, or memoranda showing or intending to show the cause of damage to Plaintiffs' real property located at **1220 Wax Wing Circle, Kingston Springs, TN 37082,** (hereinafter referred to as the "Property") or the potential methods of repair in connection therewith.

2.  A certified copy of the Plaintiffs' all-risk insurance policy that was in effect at the time Plaintiffs' claim was made.

3.  All applications for insurance or corresponding documents that relate to Plaintiffs' procurement of the subject policy.

4.  The entire underwriting file.

5.  All notices of cancellation for any policy issued to Plaintiffs by Defendant.

6.  All notices of non-renewal for any policy issued to Plaintiffs by Defendant.

7.  All field logs, notes, or other memoranda relating to or referencing any engineering or geological consultant's findings or recommendations in connection with the Plaintiffs' Property.

8.  All documents relating to or referencing the damage to Plaintiffs' Property, which were considered by any individual or entity, and any related cost estimates in connection therewith.

9.  All photographs, logs, and/or videos taken of the Plaintiffs' Property with regard to any inspection or testing performed at the request of Defendant or at the request of any of Defendant's representatives.

10.     All documents relating to or referencing any communication between Plaintiffs and Defendant, including, but not limited to, correspondence or notices in connection with Plaintiffs' claim.

11.     All documents signed by Plaintiffs and relating to this action.

12.     Any documents, notes, memoranda, diaries, reports, photographs, video, etc., of any person who visited the Property and/or spoke with Plaintiffs on behalf of Defendant, at the request of Defendant, or at the request of any Defendant's representatives.

13.     All documents used by you in making the decision to tender or to offer to tender any amount to Plaintiffs in connection with Plaintiffs' claim.

14.     All documents used by you in making the decision whether coverage would be provided with respect to Plaintiffs' claim.

15.     All documents used by you in making the decision to elect to repair or repair the Plaintiffs' Property in connection with Plaintiffs' claim.

16.     All reports, memoranda, or other documents regarding the existence of any alleged sinkhole activity investigated by Defendant or their representatives within a two block radius of the Property.

17.     All reports, memoranda, or other documents relating to any ground remediation or repair work, regardless of whether such repairs were ever performed, arising out of alleged sinkhole activity at any neighboring properties within a one-mile radius of the subject Property.

18.     All documents, including, but not limited to, prior claims documentation submitted to you by other insureds, which were consulted to assist you in determining whether there have been any other investigations for sinkhole activity at neighboring properties within a two-mile radius of the subject Property.

19.     All documents provided to Defendant's geological or engineering experts to assist them in their investigation of this claim.

20.     All statements, forms, recordings, tapes, or transcripts of recordings of statements made by Plaintiffs with regard to this claim.

21.     All documents which support, refute, or otherwise relate to Defendant's claims or defenses in this action.

22.     All documents relating to or referencing any communication by Defendant, to any testing laboratory, consultant, engineer or engineering firm, geologist or geological firm, building contractor, or any expert, including but not limited to, correspondence, memoranda and notes prepared in connection with this claim.

23.    All documents for any construction/repair estimates or construction/repair proposals regarding the Plaintiffs' Property.

24.    All documents including IRS documents, computer printouts, or notes, indicating the total number of times that any of the expert/s retained by you, your company, your third-party claims company, or your attorney in relation to Plaintiffs' sinkhole claim or any expert(s) on Defendant's behalf that has examined, visited, performed any work or any testing of any kind on Plaintiffs' property, have been retained by you, your company, your third-party claims company, or your attorney in the past three years and the total amount of compensation paid to said expert(s) for work in the past three (3) years.

25.    All claims file documents regarding Plaintiffs' claim generated prior to determination regarding Plaintiffs' claim.

26.    All documents evidencing the reserve amount set aside for Plaintiffs' claim.

27.    All documents identified or referred to in Plaintiffs' First Set of Interrogatories.

28.    All documents that relate to the interpretation or application of the subject language at issue in Plaintiffs' claim.

29.    All documents relating to your past and present document destruction policies.

30.    All documents relating to premiums that Plaintiffs paid you for policies issued.

31.    All documents relating to Plaintiffs or Plaintiffs' property, which you obtained from any source other than Plaintiffs.

32.    All claims manuals for adjustment of sinkhole claims, in both printed and electronic format. The claims manual must be produced in its entirety including, but in no way limited to those sections providing for:

      a.    Property loss handling procedures.

      b.    Supervisors and managers manuals.

      c.    Data processing and system manuals, including both intranet and e-mail methods.

      d.    Historical copies, out of date copies, and previous editions, kept on hand, and any procedures relating to the retention of claims manuals and the procedures for updating claims manuals.

33.    Documents, manuals, and reports relating to any programs to control sinkhole claim costs, including indemnity and allocated/unallocated claim costs.

34. Training materials in every format, including videotapes, recordings, and written materials for:

    a. Property loss adjusting.

    b. Sinkhole loss adjusting.

    c. Disputed claims.

    d. The hiring, supervision and management of outside experts or investigators

    e. Coverage interpretation

    f. Estimating or any aspect of estimating, including determination of property values, repair of property, reconstruction of property, and cost estimating.

35. Employee handbooks including:

    a. Orientation manuals or booklets

    b. Benefits and disability plans.

    c. Profit sharing, stock ownership, and incentive plans.

    d. Company philosophies, policies and mission statements.

    e. Sinkhole adjustment handbooks.

36. Records and copies of all public complaints against Defendant.

37. All claims files relating to any bad faith litigation against Defendant in the State of Tennessee within the past thirty-six (36) months.

38. All forms, publications, and manuals related specifically to the claims staff and personnel.

39. All guides for letter writing and correspondence, including any index of form letters and any e-mail programs or manuals.

40. Company "newsletters" regarding sinkhole claims whether in paper or electronic format, including:

a.   Company-wide newsletters.

b.   Regional and local newsletters.

c.   Video-conferences and video magazines.

d.   Newsletters directed specifically to claims.

e.   Newsletters directed to sales or agent distribution.

41.   Copies of any and all loss control, engineering, or risk inspection services rendered for the risk for a property which underlies this litigation.

42.   A copy of all agency manuals concerning sinkhole claims, including, but in no way limited to:

a.   Instructions to agents for claims handling, communications, handling of complaints and disputed claims, and handling of insurance premiums.

b.   Training for the sale of insurance policies on behalf of Defendant.

43.   Procedures, policies and instructions for any "claim committee," including, with regard to the specific sinkhole claim which underlies this litigation:

a.   The names of any and all committee members who have met, at any time, with regard to the claim which underlies this litigation.

b.   The reports issued by any claim committee.

c.   Documentation, including contemporaneous notes, of any "claim committee" deliberations.

44.   Identification of all corporate liability insurance for errors in omission or bad faith, including:

a.   Copies of all such insurance policies.

b.   Any reports and/or correspondence to or from such insurers with regard to this action.

c.   Any report and/or correspondence to or from such liability insurers. Whether or not related to this claim.

d.   Copies of all investigation and adjustment files relating to this litigation.

e.    Copies of all investigation and adjustment files whether or not related to this litigation.

45.    Any and all profit statements for the last five years.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** a true and correct copy of the foregoing Request for Production has been served contemporaneously with the Complaint and Responses to same are due within forty-five (45) days from the date of service.

By:    /s/ Thomas W. Thomson
***Smith, Kling, & Thompson, P.A.***
Thomas W. Thompson, Esquire
BPR:   030659
Primary Email: mrivera@smithkling.com
4725 N. Lois Avenue
Tampa, Florida 33614
Telephone: 813.254.1800
Facsimile: 813.254.1844
Attorney for Plaintiffs

## IN THE CIRCUIT COURT FOR CHEATHAM COUNTY, TENNESSEE

SARAH MAJORS and )
PASI LEPPIKANGAS )
                   )
    Plaintiffs, )
                   )
v. )
                   )
STATE FARM FIRE )
AND CASUALTY COMPANY, )
                   )
    Defendant. )

**FILED**

JUL 0 7 2015

**JULIE HIBBS**
**CIRCUIT COURT CLERK**

**JURY DEMAND**

Case No. $6351$

### PLAINTIFFS' NOTICE OF SERVING
### FIRST SET OF INTERROGATORIES TO DEFENDANT

COME NOW the Plaintiffs, **SARAH MAJORS and PASI LEPPIKANGAS,** (hereinafter referred to as "Plaintiffs"), by and through the undersigned counsel, pursuant to Rule 33.01 of the Tennessee Rules of Civil Procedure, and hereby give notice of serving Plaintiffs' First Set of Interrogatories to Defendant, **STATE FARM FIRE AND CASUALTY COMPANY,** which is required to provide its answers in writing under oath within forty-five (45) days from the date of service.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** a true and correct copy of the foregoing Interrogatories has been served contemporaneously with Plaintiffs' Complaint.

By: ___ /s/ Thomas W. Thomson _____

*Smith, Kling, & Thompson, P.A.*
Thomas W. Thompson, Esquire
BPR: 030659
Primary Email: mrivera@smithkling.com
4725 N. Lois Avenue
Tampa, Florida 33614
Telephone: 813.254.1800
Facsimile: 813.254.1844
Attorney for Plaintiffs

2

## INSTRUCTIONS

1. You are instructed either to produce document as they are kept in the usual course of business or to produce document organized and labeled to correspond with the categories in these Interrogatories. Documents are to be produced in full and unexpurgated form.

2. These Interrogatories shall be deemed continuing, if permitted by Rule, so as to require further and supplemental production in the event that the party requested to produced, or any of its attorneys, agents or representatives, obtains or discovers additional information or documents between the time of the initial production and the time of hearing or trial.

3. If any documents covered by these interrogatories are withheld by reason of a claim of privilege, work- product immunity or other ground of non-production, a list is to be furnished at the time that the documents are produced indentifying each such document for which the privilege is claimed specifically by its nature (e.g. letter, memorandum, etc.) together with the following information with respect to any such document withheld: author; recipient; sender; indicated or blind copies; date; subject matter; basis on which the privilege is claimed; number of pages; and the paragraph of these Interrogatories to which such document relates.

4. If a portion of an otherwise responsive document contains information that is subject to a claim of privilege, only those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

5. In the event that any document called for by these Interrogatories has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author; recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

6. All objections to any category of documents to be produced pursuant to theses Interrogatories or to any definition or instruction they contain shall be in writing and delivered to Plaintiff's counsel within the time provided in the Tennessee Rules of Civil Procedure or at such other time as is agreed upon by the parties or ordered by the Court.

7. Where identification of a document is requested, please set forth the identity of its author or originator, the date of such authorship or origination, the identity of each person to whom the original or copy was addressed or delivered, the identity of each person known or reasonably believed to have present possession, custody, or control thereof, and a brief description of the subject matter thereof.

8. Where identification of a person is requested, please set forth the person's name, last-known home and business address and telephone number, and relation to Defendants, if any.

## DEFINITIONS

A.   As used herein, "Defendant," "you" or "your" shall mean Defendant, **STATE FARM INSURANCE COMPANY**, its affiliates, partners, agents, servants, employees, attorneys, expert witnesses, accountants, auditors, and all persons or entities over which Defendant has control or have been hired, retained or employed for any purpose by it, whether directly by it or through any other person or entity.

B.   The term "Plaintiffs" shall mean **SARAH MAJORS and PASI LEPPIKANGAS**, their representatives, agents, servants, employees, attorneys, expert witnesses, accountants, auditors and all persons or entities over whom they have control or have been hired, retained or employed by the Plaintiffs to act on their behalf for any purpose whatsoever.

C.   The term "person" means any individual, corporation, partnership, joint venture, group, association, body politic, government agency, unit or other organization.

D.   The term "identify" or "the identity of" or equivalent language with reference to a natural person shall mean to give his or her entire name, his or her last known residence address, and, if employed, the name and address of his or her employer and his or her job title or position. With reference to a person who is not an individual, such terms mean to state the full name and principal office address of such person.

E.   They terms "the identity of" or to "identify" or equivalent language shall with reference to a document mean to:

   1.   Describe it in language which would be sufficient to obtain its production if used in a request for production directed to you;

   2.   State its customary business description, its nature and substance with sufficient particularity to enable it to be identified, its number (if any), and its date (it any);

   3.   And, identify the person(s) who generated it and its current custodians(s).

F.   The term "representative" as used herein with regard to a person or entity means and includes each and every present and former director, officer, partner, employee, agent , independent consultant or expert or other person (including attorneys), such as friends, relatives and spouse, acting or purporting to act on behalf of the person or entity.

G.   The terms "document" or "documents" is used in its broadest sense and includes, without limitation, drafts, documents whether printed, recorded, stored or reproduced by any mechanical or electronic process, or written or produced by hand, and including computer tapes (including backup tapes) and all other computer-related documents, within your possession, custody or control. "Documents" shall also include (1) each copy that is not identical to the original or to any other copy, and (2) any tangible thing that is called for by or identified in response to any request. "Document" as used herein shall be construed broadly to include all documents and things within the scope of Tennessee Rules of Civil Procedure. Furthermore, " Document" or " documents" shall mean any and all information in tangible form and shall include, without limiting the generality of the foregoing, all writing, letters, telegrams, telexes, teletypes, correspondence, contracts, drafts, agreements, notes to file, reports, pictures, photographs, tapes, memoranda,

4

mechanical and electronic recordings or transcripts of same, blueprints, flow sheets, calendar or diary entries, memoranda of conversations, telephonic or otherwise, memoranda of meetings or conferences, studies, reports, interoffice and intra-office communications, quotations, offers, inquiries, bulletins, circulars, statements, manuals, summaries, newsletters, compilations, maps, charts, graphs, proposition, articles, announcements, newspaper clippings, books, records, tables, book of account, ledgers, vouchers, canceled checks, check stubs, invoices, bills, opinions, certificates, promissory notes and other evidence of indebtedness, and all drafts and copies of documents as hereinabove defined by whatever means made. If multiple copies of any document exist, each copy which is in any way not completely identical to a copy which is referenced shall also be produced.

H.     The term "communication" shall mean any transmission of information by any mean transmission of information by any means, including, without limitation, by spoken language, electronic transmission of data or any other means. The term "communication" shall include, without limitation, any copies of written information received by the person or entity responding to this request, even if such person or entity is not the primary or direct addressee of such written information.

I.      The term "referring" or "relating" shall mean showing, disclosing, averting to, comprising, evidencing, constituting or reviewing.

J.      The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including, with limitation."

K.     All other words have their plain ordinary meaning.

Case 3:15-cv-00901   Document 1-1   Filed 08/17/15   Page 71 of 81 PageID #: 75

# INTERROGATORIES

1.     What is your name, address, telephone number, and if you are answering for someone else, your official position.

2.     State the name, official title and function, relationship with Defendant, address and telephone number of each person(s) who assisted in the preparation and formulation of the answers to these Interrogatories, and responses to the Request for Production of documents that accompany these interrogatories, and in the assembly of documents to be produced.

3.     List the names and addresses of all persons who are believed or known by you, your agents or attorneys to have any knowledge concerning any of the issues raised by the pleadings in this matter, and specify the subject matter about which the person has knowledge.

4.     Identify all policies that Defendant subscribed, issued or sold to Plaintiffs.

5.  On what date or dates did Defendant provide Plaintiffs with any notice of cancellation of a prior policy?

6.  On what date or dates did Defendant provide Plaintiffs with any notices of non-renewal of a prior policy?

7.  State the name, address, telephone number and title of each person(s) who had any role, whatsoever, in working on or adjusting the insurance claim(s) of Plaintiffs, **SARAH MAJORS and PASI LEPPIKANGAS**, at **1220 Wax Wing Circle, Kingston Springs, Tennessee 37802**, giving a brief description of their responsibilities regarding this matter. This interrogatory seeks the name of every employee of **STATE FARM INSURANCE COMPANY**, who had anything to do with the claim, including the adjusters, branch claims representatives, regional or home office claims committee. State the name(s), address(es), and telephone all documents that support or explain any of these facts.

    A.  If any person identified in the answer to the preceding Interrogatory has been promoted, demoted, or transferred during the time relevant herein, describe in detail the change in employment status of each such individual, including the circumstances of the person's employment before and after the change in status.

    B.  If any person identified in the answer to the preceding interrogatory is no longer employed with **STATE FARM INSURANCE COMPANY**, please state the date of separating, and the last-known residence address and telephone number of place of current employment of each such past employee.

8.  Are you aware of any other alleged sinkhole activity that has been investigated by you, anyone else on behalf of Defendant, any person, any entity, or any other insurance carrier within a two-block radius of the Plaintiffs' property during the past three (3) years? If answering affirmatively, please identify: (i) the address(es) of the area investigated; (ii) the party, including the name and address of the engineer, if you are aware, that conducted the investigation; (iii) whether or not the site contained a confirmed sinkhole; and (iv) whether or not the property was repaired, and if so, the method or repair.

9.  Prior to your determination of coverage for Plaintiffs' claim for insurance coverage, did you review any prior claims history to determine whether there have ever been any other investigations for sinkhole activity on nearby properties? If answering affirmatively, please identify: (i) the specific areas where the claims were filed; (ii) the engineering company retained by you to conduct the investigation for each such claim; and (iii) whether or not you provided coverage for the claim; and (iv) whether or not the property was repaired, and if so, the method of repair. (The term "nearby properties" is to include any property within a one-mile radius of the Plaintiffs' home).

10. State the facts and circumstances upon which you rely for each affirmative defense set forth in your Answer and Affirmative Defenses.

11.   Do you contend that anything other than a covered peril under the subject homeowners' policy is, or may be, the cause, in whole or in part, of damage to the insured's premises, for which claims have been asserted against you in this lawsuit? If so, state the legal basis for your contention, the facts or evidence upon which your contention is based, and whether or not Plaintiffs were previously notified of your contention.

12.   Have you ever heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, concerning any issue in this lawsuit? If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place, and substance of each statement.

13.   State the name and address of every person known to you, your agents, or your attorneys who has knowledge about, or possession, custody, or control of, any model, plat, map, drawing, motion picture, video-tape, or photograph pertaining to any fact or issue involved in this controversy; and describe as to each, what item such person has, the name and address of the person who took or prepared it, and the date it was taken or prepared.

14. For each claim for insurance benefits submitted to you by Plaintiffs during the past four (4) years, please state: (i) the date Plaintiffs first reported the loss to you; (ii) the "date of loss" or date associated with the claim; (iii) whether the claim was denied; (iv) if any payment was tendered or offered, the amount and date of such payment or offer; and (v) the policy number, coverage limits and policy period of any insurance policy in effect at the time the claim was submitted.

15. Describe comprehensively and in detail each and every way you believe that Plaintiffs have violated and/or failed to comply with any terms or conditions of the insurance policy, including but not limited to, cooperate with **STATE FARM INSURANCE COMPANY**'s investigation and adjustment of the loss, intentional concealment, omitted and/or misrepresented any material facts or circumstances. State then name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

16. Describe comprehensively and in detail the exact nature of all evidence in your possession, which may support any and all allegations of Plaintiffs' Complaint, or that may rebut any and all allegations of Plaintiffs' Complaint with respect to this pending action, and which are discoverable under the applicable Rules of Civil Procedure. State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

17. Describe each file that was opened, created, or maintained by **STATE FARM INSURANCE COMPANY** relating in any way to the policy or the claim, including the complete name or title of the file, its complete file number or other identifying designation, its present custodian and physical location within **STATE FARM INSURANCE COMPANY** and its general purpose or business classification. This interrogatory seeks the identification of each "claims file" and each "underwriting file" under whatever designation or description, and every copy of duplicate thereof which may exist within **STATE FARM INSURANCE COMPANY**. State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

18. State with specificity, when and why did **STATE FARM INSURANCE COMPANY** anticipate litigation with regard to a breach of contract cause of action in the case at issue. State the name(s), addresses(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

19. For the past three (3) years, state the total number of times you, your company, your agents, third party-claims companies retained by Defendant, or your attorney have retained the services of the expert(s) retained in the present case and please state the total amount of compensation paid to the expert(s) during the past three (3) years.

20.     If any Requests for Admissions in Plaintiffs' First Request for Admissions served contemporaneously with these interrogatories have been in whole or in part denied, or if anything other than an outright admission was given, please explain the facts supporting said response. Please identify any person with knowledge regarding the reasons for said response and identify any document supporting said response.

21.     For each allegation of the Complaint which you have denied, please state the factual basis for each denial and list the name and address of the person and identify any documents supporting the facts of the denial.

22.     For each year during the five year period beginning in the fifth year preceding the date on which this complaint was filed, state:

    a.      The number of sinkhole claims in the State of Tennessee opened for property damage under residential property insurance policies issued by the defendant, regardless of whether such claims resulted in payment or whether such claims are currently open.

    b.      The number of property damage claims in the State of Tennessee opened under residential property insurance policies for damage by a peril other than sinkhole, regardless of whether such claims resulted in payment or whether such claims are currently open.

23. Please list all adjusters, managers, supervisors or directors that have adjusted, examined, or handled sinkhole claims for **STATE FARM INSURANCE COMPANY** in the last five (5) years. For each, list his/her current contact information and insurance adjuster's license number.

24. Of those identified in the preceding interrogatory, has anyone ever had their license suspended or revoked or been subject to any disciplinary proceedings by any insurance regulatory body. If so, list the insurance license number of the individual, the circumstances surrounding the proceeding, the outcome of the proceeding, the date of the occurrence, and any and all relevant information pertaining to the disciplinary action.

**STATE FARM FIRE AND CASUALTY COMPANY**

By:_____

**STATE OF TENNESSEE**

**COUNTY OF**_____

The foregoing instrument was acknowledged before me this____ day of _____,
2015, by _____who is personally known tome or who has produced
_____as identification and who did (did not) take an oath, and who says the he/she
executed the foregoing Answers to Interrogatories and that the Answers are true and correct to the best of
his/ her knowledge and belief.

_____

Notary Public (seal)

_____

Printed Name

Service of Process
Dept. of Commerce & Insurance
500 James Robertson Pkwy.-7th Floor
Nashville TN 37243

CERTIFIED MAIL



7012 3460 0002 8949 9895

FIRST CLASS

UNITED STATES POSTAGE
PITNEY BOWES
0.2 1M
0004292626
$12.00
JUL 15 20
MAILED FROM ZIP CODE 372

7012 3460 0002 8949 9895          07/13/2015
STATE FARM FIRE & CASUALTY COMPANY
2908 POSTON AVENUE, C/O C S C
NASHVILLE, TN 37203